UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SIMPSON,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>THE UNITED STATES OF AMERICA<br><br>　　　　Defendant. | Case No. 17-cv-3369<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Simpson is a former inmate at the MCC Chicago who claims he was physically injured by his cellmate due to the negligence of the MCC staff. He brings a claim under the Federal Tort Claims Act (FTCA) to redress his injuries. [2]. Defendant, the United States Government, moves for summary judgment. [40]. For the reasons explained below, this Court grants Defendant's motion.

I.   Background

The facts in this section come from Defendant's Statement of Facts [42] and Defendant's Response to Plaintiff's Statement of Additional Facts [56].

Plaintiff, a federal prisoner, was convicted in February 2014 of possession with the intent to distribute heroin. [42] ¶¶ 1, 2. He was incarcerated at the MCC from June 2014 to August 2014 to undergo a psychiatric evaluation in connection with his pending sentencing hearing. *Id.* ¶ 2.

At the MCC, Plaintiff shared a cell with Patrick Pride. *Id.* ¶ 3. Plaintiff claims that on approximately July 3, 2014, Pride attacked him in their cell. *Id.* ¶ 4. Plaintiff

1

did not inform correctional staff of this incident. *Id.* Three days later, on July 6, 2014, Pride again attacked Plaintiff in their cell. *Id.* ¶ 5. After this second attack, Plaintiff approached MCC Officer Branislav Orosz to talk about Pride; while Plaintiff spoke to Officer Orosz, Pride came up to them and started hitting Plaintiff. *Id.* ¶ 6. Officer Orosz activated his body alarm to request assistance and verbally ordered Pride to stop. *Id.* ¶ 7. Pride did stop after several orders to do so. *Id.*

After this attack, a medical practitioner examined Plaintiff, noting that Plaintiff had suffered superficial lacerations on the center of his forehead and his right ear, and abrasions on the right side of his neck and shoulder. *Id.* ¶ 10. The medical practitioner instructed Simpson to apply cold compresses and follow up at sick call, as needed. *Id.*

Generally, when an inmate arrives at MCC, he undergoes social and medical screening interviews to determine if he may be placed in the general population. *Id.* ¶ 17. If an incoming inmate cannot be safely housed in the general population, MCC has discretion to place the inmate in the Special Housing Unit (SHU). *Id.* ¶ 18. Defendant says this decision is a "judgment" call. *Id.* The MCC houses many inmates with histories of violent behavior and ordinarily places inmates in the SHU only if staff believes their presence in the general population would immediately threaten the safety, security, and orderly operation of the institution. *Id.* ¶ 19. In addition, because the SHU's conditions are restrictive, staff must obtain approval from a lieutenant or captain before placing an inmate in the SHU. *Id.*

Pride, like Plaintiff, was incarcerated at MCC Chicago in July 2014 to undergo a competency evaluation pursuant to 18 U.S.C. § 4241(b). *Id.* ¶ 20. Neither Pride nor Plaintiff was serving a federal or state sentence at the time. [56-1] ¶ 1. The MCC held Pride pending a hearing to revoke supervised release. *Id.* ¶¶ 1, 3. Pride's Sentry (a Bureau of Prisons database) information indicates that he was classified as "high security" and had an extensive history of violent behavior. [42] ¶ 20. As of June 2014, Pride was being treated for undifferentiated schizophrenia. *Id.* ¶ 25.

The BOP has a policy to use the least restrictive housing assignment necessary to manage an inmate's ongoing adjustment. *Id.* ¶ 26. Therefore, mentally ill inmates are not placed in the SHU unless they pose an imminent or ongoing threat to staff, other inmates, or institution security. *Id.* Similarly, mentally ill inmates are not housed in the SHU as a precautionary measure. *Id.*

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528

3

(7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Analysis

Plaintiff claims that Defendant acted negligently by failing to segregate Pride from him at the MCC. [2]; [53] at 1. Defendant moves for summary judgment, arguing that the FTCA's discretionary function exception bars Plaintiff's claim. [41].[1] For the reasons below, this Court agrees.

The FTCA authorizes "claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA contains an exception, however, for any claim arising from acts or omissions by government employees "based upon . . . the failure to exercise or perform a discretionary function or duty." 28 U.S.C. §

---

[1] Defendant originally moved for summary judgment on two other, alternative bases: (1) Plaintiff has no evidence that MCC staff acted negligently; and (2) Plaintiff's claim is time-barred. [41]. Defendant subsequently withdrew the latter argument. [50] at 1. Further, this Court need not reach the merits of the former argument—whether MCC staff acted negligently—because the discretionary function exception bars Plaintiff's claim in its entirety.

4

2680(a). Defendant must prove two elements to merit the discretionary function exception: (1) the decision must have been discretionary in the sense that it involved an element of judgment or choice, and the decisionmaker did not deviate from any course of action mandated by statute, regulation, or policy; and (2) the decision must have been based upon considerations of public policy. *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014).

This Court finds that both elements are met here. First, the MCC's decision to house Plaintiff and Pride together constitutes a discretionary act. The parties do not dispute that the BOP uses the least restrictive housing assignment possible, and thus mentally ill inmates—such as Pride—cannot be placed in the SHU unless they pose an imminent or ongoing threat to staff, other inmates, or institution security. [42] ¶¶ 20, 26. Moreover, when an inmate arrives at MCC, he goes through social and medical screening interviews; after this screening, the MCC has discretion to place the inmate in the SHU, but ordinarily does so only if it believes that inmate's presence in the general population would immediately threaten the safety, security, and orderly operation of MCC. *Id.* ¶¶ 17–19. The MCC thus had to make—and did make—a judgment call about where to place inmates like Plaintiff and Pride. *See Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (the decision "as to where to house a federal prisoner is precisely the sort of discretionary act that falls within the discretionary function exception.").

Second, this Court finds that the MCC made its decision to place Plaintiff and Pride in the same cell based upon considerations of public policy. The Seventh Circuit

5

has noted that inherent in inmate placement decisions "are considerations of public policy such as concerns with security, cost, overcrowding, medical care, and the suitability of each facility to meet the needs of the prisoner." *Id.* And indeed, as explained above, the MCC's decision to house Plaintiff with Pride was based upon concerns regarding safety, security, and orderly operation. Therefore, based upon the record, this Court remains satisfied that the MCC's decision was based upon considerations of public policy.

Indeed, Plaintiff's sole argument against Defendant's motion is that the MCC violated its supposed mandatory duty to separate pretrial inmates from convicted inmates. [53] at 2–5. Here, Plaintiff invokes a federal statute requiring that an order of pretrial confinement shall "direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal." 18 U.S.C. § 3142(i)(2). He also points to a corollary regulation stating: "Pretrial inmates will be separated, to the extent practicable, from convicted inmates." 28 C.F.R. § 551.100.

Plaintiff bases his argument upon the assumption that MCC misclassified Pride as a pretrial inmate because Pride had previously been convicted of a felony. [53] at 2. Plaintiff's assumption is incorrect. An inmate committed under 18 U.S.C. 4241(b) "is considered to be a pretrial inmate," unless he is "at the same time serving a state or federal sentence." 28 C.F.R. § 551.101(a)(2)–(3). Pride was held at MCC Chicago to undergo a competency evaluation pursuant to 18 U.S.C. § 4241(b). [42] ¶

6

20. Pride was not, however, serving a sentence at the time; rather, he was at the MCC pending a hearing to revoke supervised release. [56-1] ¶¶ 1, 3. Therefore, the MCC properly classified Pride as a pretrial inmate, like Plaintiff, and did not violate any duty to separate the two. In the end, the record contains no evidence that the MCC deviated from any course of action prescribed by statute, regulation, or policy,

For these reasons, this Court finds that the discretionary function exception forecloses Plaintiff's FTCA claim.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion for summary judgment [40]. All dates and deadlines are stricken. Civil case terminated.

Dated: March 12, 2019

Entered:

_____
John Robert Blakey
United States District Judge